IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NASHID Q. ABDUL-RAHMAN, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CHASE HOME FINANCE CO., LLC, et al., | : | NO. 13-5320 |
| | : | |

**Restrepo, J.**                                                             **July 11, 2014**

**MEMORANDUM**

Nashid Q. Abdul-Rahman brought suit against Chase Home Finance Co., LLC and Deutsche Bank National Trust Company ("the Mortgage Companies"). Abdul-Rahman alleges a variety of state law causes of action stemming from a dispute over a loan modification and subsequent mortgage foreclosure action filed against him by the Mortgage Companies. I have jurisdiction pursuant to 28 U.S.C. § 1332(a). The Mortgage Companies now seek to dismiss the Amended Complaint for the failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the motion will be granted in part and denied in part.

## I.  FACTS

The facts as pleaded in the Amended Complaint are as follows.[1] Abdul-Rahman is a homeowner in Philadelphia. In 2004, the Mortgage Companies[2] filed a mortgage foreclosure action against him for the failure to timely pay his loan. Am. Compl. 5. In February of 2005,

---

[1] Because Abdul-Rahman is proceeding without a lawyer, I will discern the alleged facts as best I can from the Amended Complaint and exhibits that he attaches. *See Erickson v. Pardus*, 551 U.S. 89, 94, (2007) ("A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal citations and quotation marks omitted). And, for purposes of clarity, because the Amended Complaint is somewhat confusingly organized, each page number referenced here will refer to the corresponding page numbers as they appear on the Eastern District's Electronic Case Filing (ECF) system, rather than the hand-written numbers listed on the Amended Complaint.

[2] Both the Amended Complaint and the Mortgage Companies' Motion to Dismiss essentially treat the defendants as a single entity. For the purposes of this memorandum only, I will do the same.

Abdul-Rahman filed for bankruptcy protection. *Id.* In 2008, he was told that he owed the Mortgage Companies approximately $4,600.00 in "post-petition arrears," which he paid. *Id.*

In or around November of 2008, Abdul-Rahman was approved for a mortgage modification that would lower his monthly payments from $1,236.00 per month to $921.00 per month, and reduce his interest rate from 8.99 percent to 3.25 percent. *Id.* at 32-33. He alleges that to execute the modification he had to return a notarized document and pay a $2,030.00 fee. *Id.* at 9, 28. Thus, on November 13, 2008, he mailed the Mortgage Companies a signed and notarized modification agreement, along with a Western Union transfer equaling the amount of the $2,030.00 fee and two months' worth of payments. *Id*. The Mortgage Companies accepted his payment and did not alert him to any problems. *Id.* As a result, Abdul-Rahman assumed that his modification was complete and commenced paying $921.00 per month, rather than $1,236.00. *See id.* at 28. Despite these payments, the Mortgage Companies allegedly informed him seven months later that his mortgage was in default status for lack of payment. *Id.* at 3-4. He alleges that this default status stemmed from the Mortgage Companies' failure to properly process the loan modification. *Id.* As a result of this failure, the Mortgage Companies considered his payments of $921.00 as partial payments only and placed the moneys into a suspense account rather than crediting them toward principal and interest. *Id.*

On July 22, 2012, apparently still believing that Abdul-Rahman was in default, the Mortgage Companies filed a foreclosure action in the Philadelphia Court of Common Pleas. *Id.* at 4. That action was discontinued in August of 2013, after Abdul-Rahman apparently agreed to a new mortgage modification with Chase. Abdul-Rahman alleges that this new modification contained significantly inferior terms than the first modification. For example, while his original modification provided for a fixed interest rate of 3.25 percent, the new modification contained a

variable interest rate. *Id.* at 10. Additionally, the new modification capitalized various fees and foreclosure costs into the principal balance of the mortgage, thus increasing that principal balance by $40,000.00 more than the first modification would have. *Id.* at 24.

## II. LEGAL STANDARD

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers & Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001). While a court need not credit "bald assertions" or "legal conclusions," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), pro-se pleadings in particular must be construed liberally. *See Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).

To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Id.* at 555. Although the Federal Rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply reciting the elements will not suffice. *See id.; see also Phillips*, 515 F.3d at 231. Finally, when, as here, a complaint contains attachments, examination of the attachments is proper when considering a

motion to dismiss. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

### III. DISCUSSION

Abdul-Rahman sues under a wide range of state law causes of action: breach of contract, fraud, abuse of judicial process, malicious prosecution, negligent misrepresentation, breach of fiduciary duties by the Mortgage Companies, breach of fiduciary duties by a mortgage broker, unconscionability, lack of standing, failure of consideration, recoupment, and unjust enrichment. I will address each in turn.

### A.  Breach of Contract

Abdul-Rahman alleges that his mortgage contract was modified and that the Mortgage Companies have breached their duties under that modified contract. The Mortgage Companies counter that the Amended Complaint "fails to sufficiently identify the alleged breach, or specific provisions, at issue and resultant damages apart from the abstract, unquantifiable term of 'financial hardship.'" Defs.' Mem. at 7. On balance, and construing each allegation in the light most favorable to Abdul-Rahman, the Amended Complaint makes out a plausible breach of contract claim.

"Under Pennsylvania law, '[a] breach of contract action involves: (1) the existence of a contract; (2) a breach of a duty imposed by the contract; and (3) damages.'" *Burton v. Teleflex Inc.,* 707 F.3d 417, 431 (3d Cir. 2013) (quoting *Braun v. Wal-Mart Stores, Inc.,* 24 A.3d 875, 896 (Pa. Super. Ct. 2011)). To satisfy the first element – the existence of a contract itself – a party must plead enough facts to demonstrate "(1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." *ATACS Corp. v. Trans World Commc'ns,*

*Inc.*, 155 F.3d 659, 666 (3d Cir. 1998). Finally, "[i]t is well settled under Pennsylvania law that a written agreement can be modified or amended by a subsequent agreement." *Crown Coal & Coke Co. v. Powhatan Mid-Vol Coal Sales, L.L.C.*, 929 F. Supp. 2d 460, 467 (W.D. Pa. 2013) (citations omitted).

Abdul-Rahman alleges that the Mortgage Companies offered to modify the mortgage contract by lowering his interest rate to 3.25 percent, with a monthly principal and interest payment of $921.00. He alleges that he returned a notarized modification contract and paid a $2,030.00 fee, which the Mortgage Companies accepted.[3] Accordingly, he has properly alleged facts showing the parties' mutual intention to be bound by a modified agreement, sufficiently definite terms, and consideration. In doing so, he properly alleges the existence of a contract. *See ATACS*, 155 F.3d at 666.

Abdul-Rahman also sufficiently alleges a breach of a contractual duty and resulting damages. *See Burton,* 707 F.3d at 431. As alleged by Abdul-Rahman, the modified contract provided for monthly payments of $921.00. He alleges that he subsequently performed his obligations, but that the Mortgage Companies did not, failing to credit his payments toward his principal and interest. Moreover, he alleges that as a result of that failure he was put into default status, a foreclosure was filed against him, and he was forced to accept an inferior modification.

---

[3] There has been significant litigation in state and federal courts regarding the enforceability of mortgage modifications received through the Home Affordable Modification Program (HAMP). *See, e.g., Cave v. Saxon Mortg. Servs., Inc.*, No. 11-4586, 2012 WL 1957588, *4-9 (E.D. Pa. May 30, 2012); *Healey v. Wells Fargo, N.A.*, No. 11-3340, 2012 WL 994564, at *n.13 (C.P. Lackawanna, March 20, 2012); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560-66 (7th Cir. 2012); *Bosque v. Wells Fargo Bank, N.A.*, 762 F. Supp. 2d 342, 351-53 (D. Mass. 2011). While Courts in each of the above cases found that there was a potentially enforceable contract, their analyses were rendered more complicated by the fact that the HAMP modification scheme required three preliminary trial plan payments as a condition precedent to acquiring a permanent mortgage modification. *See Cave*, 2012 WL 1957588 at *1. As best as can be discerned from the Amended Complaint, the modification allegedly agreed to here appears to be much more straightforward.

These facts are enough to plausibly establish a breach and resultant damages. As a result, Abdul-

Rahman has sufficiently pleaded a breach of contract action under Pennsylvania law.[4]

### B. Fraud

Abdul-Rahman pleads that he was defrauded by the Mortgage Companies. To state such

a claim, he must allege enough facts that establish:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely,
> with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the
> intent of misleading another into relying on it; (5) justifiable reliance on the
> misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 275 (3d Cir. 2010) (internal citations omitted).

Additionally, pursuant to Federal Rule of Civil Procedure 9(b), the pleading requirements for

fraud are greater than for other causes of action. *See, e.g., Lum v. Bank of Am.*, 361 F.3d 217, 220

(3d Cir. 2004). Thus, Abdul-Rahman must "support [his] allegations of . . . fraud with all of the

essential factual background that would accompany 'the first paragraph of any newspaper story'

– that is, the 'who, what, when, where and how' of the events at issue." *In re Rockefeller Ctr.*

*Properties, Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (quoting *In re Burlington Coat*

*Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997)). The Amended Complaint does not meet

this heightened standard. It provides little specificity as to the alleged fraud; instead it provides a

conclusory statement that there was a "suppression of truths." Moreover, as noted above, what

brings Abdul-Rahman into court is not an allegation that the Mortgage Companies tricked him

---

[4] Defendants are correct that Abdul-Rahman's claim for emotional distress damages on his breach of contract claim fails as a matter of law. A plaintiff may not claim emotional distress damages in a Pennsylvania breach of contract action unless he pleads facts that support a claim that the emotional distress "is accompanied by bodily harm or where the breach is of such a kind that serious emotional disturbance was a particularly likely result." *Jean Anderson Hierarchy of Agents v. Allstate Life Ins. Co.*, 2 F. Supp. 2d 688, 694 (E.D. Pa. 1998); *see also Nicholas v. Pa. State Univ.*, 227 F.3d 133, 147 (3d Cir. 2000).

into entering a modification on a false premise, but rather, that they refused to honor a valid

contract for which he bargained. Accordingly, his claim for fraud will be dismissed.

### C.  Statutory Wrongful Use of Civil Proceedings and Abuse of Judicial Process

Abdul-Rahman also brings claims for wrongful use of civil proceedings and abuse of

judicial process. "Pennsylvania law recognizes two claims that provide relief from the misuse of

civil process: (1) a statutory claim for wrongful use of civil proceedings/malicious use of process

and (2) a common law claim for abuse of process." *Gordian Med., Inc. v. Gentell, Inc.*, No. 12-

5582, 2013 WL 4457363, at *1 (E.D. Pa. Aug. 21, 2013) (citing 42 Pa. C.S.A. § 8351 and

*Langman v. Keystone Nazareth Bank & Trust Co.,* 502 F. App'x 220, 224-25 (3d Cir. 2012)).

"Although often confused," the "torts of malicious use of process and malicious abuse of process

are separate and distinct claims." *U.S. ex rel. Magid v. Wilderman*, No. 96-4346, 2005 WL

469590, *2 (E.D. Pa. Feb. 28, 2005) (citing *McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987)).

Neither claim is plausible here and each will be dismissed.

### i.  Wrongful Use of Civil Proceedings/Dragonetti Act

Wrongful use of civil proceedings, codified by the Dragonetti Act, 42 Pa. C.S. § 8351,

"arises when a party institutes a lawsuit with a malicious motive and lacking probable cause." *Id.*

(quoting *Hart v. O'Malley*, 781 A.2d 1211, 1219 (Pa. Super. Ct. 2001)); s*ee also McNeil v.*

*Jordan*, 894 A.2d 1260, 1274 (Pa. 2006). In addition to malicious motive and lack of probable

cause, a party must plausibly allege that "[t]he proceedings have terminated in favor of the

person against whom they are brought." 42 Pa. C.S. § 8351(a)(2).

Abdul-Rahman cannot meet this last condition. The underlying state-court action against

him was withdrawn after he and the Mortgage Companies agreed to a new mortgage

modification. "Whether a withdrawal or an abandonment constitutes a final determination of the

case in favor of the person against whom the proceedings are brought . . . depends upon the circumstances under which the proceedings are withdrawn." *Georgiana v. United Mine Workers of Am., Int'l Union by Trumpka*, 572 A.2d 232, 234 (Pa. Super. Ct. 1990). However, "a termination of proceedings pursuant to an agreement of compromise is not 'termination in favor of the person against whom they are brought' for purposes of actions premised on wrongful use of civil proceedings." *Id.* at 235 (quoting Restatement (Second) of Torts, § 660 (1974)); *see also Hilfirty v. Shipman*, 91 F.3d 573, 581 (3d Cir. 1996) (within the criminal context, "dismissal of charges as a result of a compromise is not an indication that the accused is actually innocent of the crimes charged."). Here, the very gravamen of the action is that the compromise reached in the underlying foreclosure case, including a loan modification with significantly worse terms than the first alleged modification, was an unfavorable result that Abdul-Rahman only accepted because he had no other choice. It is therefore apparent from the allegations of the Amended Complaint that the settlement of the foreclosure action was not a determination in his favor such that he may sustain a Dragonetti Act claim.

### ii.  Abuse of Judicial Process

Abdul-Rahman's abuse of process claim must also be dismissed. "[T]he Pennsylvania common law tort of abuse of process permits a plaintiff to recover if he can 'show that the defendant used legal process against the plaintiff in a way that constituted a perversion of that process and caused harm to the plaintiff.'" *Bobrick Corp. v. Santana Products, Inc.*, 422 F. App'x 84, 86 (3d Cir. 2011) (quoting *Gen. Refractories Co. v. Fireman's Fund Ins. Co.,* 337 F.3d 297, 304 (3d Cir. 2003)); *see also McGee*, 535 A.2d at 1026 (noting that the tort is concerned with the "use of the legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process."). "The classic example of abuse of process is the

initiation of a civil proceeding to coerce the payment of a claim completely unrelated to the

cause of action sued upon." *U.S. ex rel. Magid*, 2005 WL 469590 at \*2 (citing *Triester v. 191*

*Tenants Ass'n*, 415 A.2d 698, 712 (Pa. Super. Ct. 1979)) (internal quotation marks omitted).

Here, the Complaint fails to allege anything of the sort. Again, Abdul-Rahman believes he was

wrongfully foreclosed upon due to the failure to process his mortgage modification. He cannot,

however, allege that a foreclosure suit itself was the wrong process once the Mortgage

Companies decided – correctly or not – that he was in default. Because a mortgage foreclosure

action is an appropriate legal course when a borrower is in default, Abdul-Rahman's abuse of

process claim will also be dismissed.

### D.  Negligent Misrepresentation

Abdul-Rahman also brings a claim for negligent misrepresentation, which requires

allegations that plausibly demonstrate "(1) a misrepresentation of a material fact; (2) made under

circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to

induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance

on the misrepresentation." *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999). Further, "[a] negligent

misrepresentation claim must be based on some duty owed by one party to another." *Morilus v.*

*Countrywide Home Loans, Inc.*, 651 F. Supp. 2d 292, 306 (E.D. Pa. 2008) (citing *Gibbs v. Ernst*,

647 A.2d 882, 890 (Pa. 1994)). Abdul-Rahman's claim fails because he fails to plausibly allege

that the Mortgage Companies owed him such a duty.

The factors a court must consider when determining "the existence of a duty are well-

settled," and include:

> (1) the relationship between the parties; (2) the social utility of the actor's
> conduct; (3) the nature of the risk imposed and foreseeability of the harm
> incurred; (4) the consequences of imposing a duty upon the actor; and (5) the
> overall public interest in the proposed solution.

9

*Bilt-Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270, 281 (Pa. 2005) (citing *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1169 (Pa. 2000)). In general, however, the relationship between a customer and lender acting at arm's length does not give rise to a fiduciary relationship or duty, such that a negligent misrepresentation claim could attach. *See Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 783 (E.D. Pa. 2008) (surveying cases). Here, Abdul-Rahman has presented no factual allegations that demonstrate anything but arm's length transactions, nor any other factual allegations that would establish a relationship between the parties such that a duty was owed to him. Without such a duty a negligence action is not viable, and this cause of action must be dismissed.

### E.  Breach of Fiduciary Duty by Mortgage Companies

For similar reasons, Abdul-Rahman's claim that the Mortgage Companies breached a fiduciary duty to him will also be dismissed. "A plaintiff asserting a breach of fiduciary duty claim must show: (1) a confidential relationship with the defendant; (2) the defendant intentionally or negligently failed to act in good faith and solely for plaintiff's benefit; (3) an injury [to] the plaintiff; and (4) the defendant's failure was a real factor in bringing about plaintiff's injuries." *Brock v. Thomas*, No. 10-687, 2014 WL 2159184, at *8 (E.D. Pa. May 22, 2014) (internal quotation marks and citations omitted).

"Although no precise formula has been devised to ascertain the existence of a confidential relationship, it has been said that such a relationship . . . exists whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest." *Silver v. Silver,* 219 A.2d 659, 662 (Pa. 1966), *quoted in Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 500 (3d Cir. 2013). Thus, Abdul-Rahman must first allege that a fiduciary relationship existed "involving trust and

confidence between the parties." *Bucci*, 591 F. Supp. 2d at 783 (internal quotation marks omitted). He has, however, presented no factual allegations that, if proven, would plausibly establish such a relationship. Accordingly, this cause of action also fails as a matter of law.

### F.   Breach of Fiduciary Duty by Mortgage Broker

Abdul-Rahman also alleges that a mortgage broker breached a fiduciary duty to him. In certain circumstances, a mortgage broker may be held to be a fiduciary to a borrower. *See Brock*, 2014 WL 2159184 at *11 (E.D. Pa. May 22, 2014) (after bench trial, finding that a mortgage broker was liable for breach of fiduciary duty to elderly victim of foreclosure rescue scam). As noted above, however, the essence of the Amended Complaint is that the Mortgage Companies failed to process a mortgage modification. Within that context, it is unclear what the misrepresentations are that Abdul-Rahman is alleging that a mortgage broker could have made that would be relevant to this action.

Moreover, the mortgage broker is not a party to this action. Thus, even if there were a confidential relationship plausibly pleaded, the Amended Complaint would need to allege facts that could establish an agency relationship between that mortgage broker and the Mortgage Companies, such that the Mortgage Companies could be held liable for the conduct of the mortgage broker. *See Hawthorne v. Am. Mortgage, Inc.*, 489 F. Supp. 2d 480, 484 (E.D. Pa. 2007) (holding that a plaintiff attributing the specific acts of a mortgage broker to a separate mortgage company must plead facts that demonstrate the broker was acting as the agent of the mortgage company); *see also Scott v. Purcell*, 415 A.2d 56, 60 (Pa. 1980) ("The basic elements of agency are the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in

control of the undertaking.") (citations and internal quotation marks omitted). The Amended

Complaint does not do so. As a result, this claim fails as a matter of law and will be dismissed.

### G. Unconscionability, Lack of Standing, Failure of Consideration, and Recoupment

Abdul-Rahman also brings claims for unconscionability, lack of standing, failure of

consideration and recoupment. Each claim appears to effectively be an affirmative defense or

counterclaim to the earlier foreclosure action filed by the defendants.

#### i. Unconscionability

Unconscionability is generally a defense to enforcement of a contract. S*ee Salley v.*

*Option One Mortg. Corp.*, 925 A.2d 115, 119 (Pa. 2007) ("The doctrine of unconscionability has

been applied in Pennsylvania as both a statutory and a common-law defense to the enforcement

of an allegedly unfair contract or contractual provision."); *Denlinger, Inc. v. Dendler*, 608 A.2d

1061, 1067 (Pa. Super. 1992). As best as can be discerned from the Amended Complaint, Abdul-

Rahman is arguing that the original mortgage contract he signed was unconscionable due to the

behavior of the same unnamed mortgage broker. Thus, Abdul-Rahman again bases his claim

upon the conduct of an absent mortgage broker, but now does so as a defense to a foreclosure

action that is not before the Court. Accordingly, the claim will also be dismissed.

#### ii. Recoupment, Failure of Consideration and Lack of Standing

The next three claims suffer from similar infirmities. Recoupment is, in limited

circumstances, a defense or counterclaim to a foreclosure action. *See, e.g., Green Tree Consumer*

*Disc. Co. v. Newton*, 909 A.2d 811, 815 (Pa. Super. Ct. 2006). Similarly, lack of standing is often

a defense to a foreclosure, especially in an era of frequently transferred mortgage obligations.

*See, e.g., JP Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258, 1262 (Pa. Super. Ct. 2013).

Finally, failure of consideration is another general defense to enforcement of a contract. *See, e.g.,*

*Resolution Trust Corp. v. Forest Grove, Inc.*, 33 F.3d 284, 292 (3d Cir. 1994). Indeed, the Amended Complaint makes clear that Abdul-Rahman brings these counts as defenses to the long-settled foreclosure action. *See Am. Compl.* at 13 (recoupment) (pleading "a defense and claim in recoupment . . . which, under other law, nullifies the obligation of the obligor"); *id.* at 12 (standing) ("a creditor cannot be a creditor if they don't hold the asset in question"); *id.* at 13 (consideration) ("Neither Defendants offered any discount of rates or disclosed any monetary value of instruments being produced in the signing of mortgage transaction or the creation of derivatives."). This action, of course, is not a foreclosure action against Abdul-Rahman for which he needs to assert defenses, but instead his own affirmative suit with regards to a modified mortgage contract. Consequently, none of these claims are viable as a matter of law, and will be dismissed.

### H. Unjust Enrichment

Lastly, Abdul-Rahman brings a cause of action for unjust enrichment. However, unjust enrichment is "inapplicable when the relationship between the parties is founded on a written agreement or express contract." *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d. Cir. 1987) (internal citations omitted). The parties' relationship here is clearly founded on a contract, be it the original mortgage, the modification that Abdul-Rahman seeks to enforce, or the modification to which he subsequently agreed. Therefore, this claim must also be dismissed.

### IV. CONCLUSION

For the reasons stated above, the Mortgage Companies' motion to dismiss Abdul-Rahman's breach of contract claim will be denied. However, the motion will be granted with respect to each of the Amended Complaint's remaining claims.

An implementing Order will follow.

13